Case No. 18-1176, DLH Communications, Inc. of HUD v. Federal Communications Commission, is the evidence for the account of the gossip pre-appellee. Good morning. Good morning, and may it please the Court, I'd like to ask that three minutes of my time be reserved for rebuttal. And I'd also like to ask the Court's indulgence for my voice. I was at a restaurant two days ago where I was having a shout across the table to be heard, and it left me with a bit of hoarseness. So I apologize for that. To begin, though, I wanted to point out that basically our brief presents you with two decisional paths. One is finding that the Commission erred back in 2003 by finding that my client shouldn't have been given extra time to come into compliance with the financial obligations that it had. If you agree with us on that, that would obviously moot the need to go into the consequences of a default, which is what a lot of the rest of the brief is addressing. This morning, unless you direct me otherwise, I'm planning to focus on the default provisions, not because I don't think the original point is without merit. Certainly, there's a lot of points we made that show that the Commission deviated from its own precedence in not granting us an extension of time. But I'm also mindful of the fact that the Court is sometimes reluctant to go back 15 years and try to set everything back to where it was then, which would be a little difficult in this case, but not impossible. Because the licensees who acquired these licenses after the Commission canceled them were aware that there was an appeal pending, and therefore they took those licenses knowing that there was the possibility that this could happen. So having said that, I'll turn to the default situation. And there are the two things that we really have to address are two basic questions. Does GLH owe the FCC any money, and does the FCC owe GLH any money? Two different things. The answer to the first question should be kind of an easy one, because it seems like the FCC and we agree. And I say that by turning to the touchstone of the 1996 opinion letter, which lays out very succinctly, I think, the Commission's policy. And when I say the Commission, even though that letter was issued by the FCC's General Counsel and the Wireless Communications Bureau Chief, the full Commission has since subscribed to that as representing the policy of the FCC. So the fact that it was done by a delegated authority, I don't think we have to worry about here. But in that letter, the FCC took the position, which I think was very well founded in just the common law, the UCC, the Federal Debt Collection Standards, and everything else, that the equitable principle that applies in a situation where you've got a defaulting debtor and a collection on the collateral, that the funds received by the FCC and the reauction of the collateralized asset, or in this case the licenses, should be offset against the debt that the debtor owed. So I'm clear. What is the status of matters? Is your client's request just pending? Because the FCC says, well, it hasn't taken any enforcement or debt collection action. So these arguments are premature. Well, that's what they're saying, but the FCC rules actually say that when you cancel a license, which they did in 2003, they're supposed to initiate promptly debt collection proceedings. So they haven't done that, but that's not your argument. That's what I'm trying to understand here. What are you looking for? You're looking for, I mean, to put it in its simplest form, a piece of paper that says, in light of the reauction proceeds, your client no longer owes $6 million. Yes, and the reason I'm saying that is the opinion letter does speak about the debt collection proceedings, but it doesn't say that the offset principle only gets applied at the very end of the line. I mean, in my view, there's no need for debt collection proceedings because there's no longer any debt. It's been offset. But you want some acknowledgement in writing? Yes. Because what I'm trying to understand is how is that adversely affecting your client? Well, for the last 15 years, we've been under a cloud where the commission is- But what does that mean? Well, it means that we've got a potential $6 million liability that's hanging out there that shouldn't be there. I understand that, but it's like you own your house and you have a mortgage, and the mortgage could be called or something like that. Is your client unable to do business? Well, our client couldn't continue to do business on licensed areas. Right, but it has two of the six licenses, right? Four of the six. No. It has? Oh, I'm sorry. Yes, it has two of the six. You have to pay what was owed on the two. I'm sorry. Yes, that's right. So it's continuing to function. I understand the cloud, but I'm just trying to understand what is the on-the-ground impact of the cloud. Well, first of all, I should say the client has since sold those two licenses, so it doesn't have those two licenses anymore either. But here's the concern. The FCC seems to be very coy or cagey about this whole thing. I mean, when they issued their 2010 order, I actually called the FCC and I said, does this mean that we don't owe you anything because you seem to be saying you're subscribing to the 1996 opinion letter. And I was told, Don, we're not that subtle. So, I mean, it sort of seems like the commission has something that's up in the air that I don't know what it is, but the equitable principle that they say they're applying under the 1996 opinion letter should remove us from any debt obligation. And, you know, this can't just go on indefinitely. I actually had to file a petition for mandamus for the commission to even issue the last order that's now under review. So if we were to grant some part of your petition, what would you be asking in terms of what the commission has failed to do? I'd be asking them to confirm or to declare or to state that there's no longer any money due from GLH because of the offsetting principle that was espoused in the opinion letter. Mr. Evans, is there not a process by which you can trigger the clearing up of this cloud? In other words, you could petition to compromise this putative debt, you know, and obviously I understand your position that you don't think there is or can be a debt, but the commission has clearly taken the position that there is. That's what you claim harms your client. Is there not a way to trigger a decision on this on your part? Well, we did petition for debt compromise back in 2003, which the commission – well, we petitioned for a waiver of the rules, and the commission denied that. We petitioned for a debt compromise, and I think they dismissed that. So by the time they dismissed it, it was clear that they had gotten more money in the auction than we owed, and therefore I thought there was really no need for a debt compromise because there was no longer any more debt. I don't know that there's any specific way we can trigger or force the commission to initiate debt collection proceedings. Do you have a record, say, for where you petitioned for debt compromise? Yeah, there's a copy of it in the joint appendix. I thought what the commission did then, it said your debt compromise petition was premature. Well, they did say that. So maybe it's not premature any longer. I thought the idea was that it was premature at that time, but now you could re-petition for a debt compromise, and then you would get the resolution that you're asking for, which is the determination of whether money is still owed. Well, I mean, I suppose we could do that, but in my view there was no longer a need for debt compromise because there was no longer a debt is the way I viewed it. So what if you could? We can ask agency counsel about this, but let's suppose their position is you can seek – and you'll get the very resolution that you're asking for, which is a determination of whether a debt is still owed. I hope that we could do that, but I don't know that. I mean, it seems to me that the clearest way to do it would be for the commission to just respond to the petitions that we filed today, which raise this very issue, do we owe any money, and they could just decide that in the context of the pleadings that they've had for the last 10 years. So along the lines that my colleagues have been asking you, are there any rules that you know of that the FCC has promulgated that directly address this precise situation? No, there are none that I know of. Yeah, okay. So, I mean, as I say, it seems like we and the FCC are sort of on the same page as far as this offset goes. The trickier one is the answer to the second question that I posed, is does the FCC owe GLH any money? And in that case, we can still use the touchstone of the 1996 opinion letter, because there the FCC very elegantly laid out how it works with the UCC being sort of subsumed into the federal common law and then applied to the FCC's proceedings and court proceedings that are related to that. And the FCC there, you know, basically said that the UCC would normally or generally be applied to debtor relations, you know, regarding installment payments, unless there was a conflicting federal interest. And what the commission found in 1996 was the conflicting federal interest was the obligation that's set forth in the Communications Act that auction proceeds have to go into the federal treasury. That, they said, precluded them from paying over to us the excess proceeds of the re-auction. But that objection doesn't really hold any water for three reasons, three very clear reasons. First of all, the paying out of the money to GLH would be part of the auction implementation process, which Section 307J8 specifically allows the commission to use proceeds of the auction for. Secondly, back in 1997, when the commission handled the C-block relief situation, we described in our brief where there were companies that had overbid by hundreds of millions of dollars on their licenses. The commission granted them a variety of relief options, two of which, I believe, required the treasury to give them refunds of money that they had paid in to the treasury. So, obviously, the commission then had no problem taking money out of the treasury to handle an auction relief situation, and there's no reason why that couldn't be applied here, too, that I know of. And thirdly, we suggested to the commission, if you've got to worry about the cash, we will take auction credits in lieu of cash, which is something that the commission has done in the past. And in a way, that's kind of a similar concept to the offset that the commission seems to think is okay and doesn't run afoul of Section 309J8 because it's not actually taking money out of the treasury. It's just giving you a credit. So all of those reasons suggest that under the 1996 FCC opinion letter, we really should be entitled to receipt of the money for the overage in the reoption of those licenses. All right. Mr. Owens, I had a question about on JA-12 in the agreement, the security agreement. The FCC says that your client contracted away any right to offset or surplus in this paragraph D. Debtor has no right or interest in any monies or evidence of indebtedness given to the commission by a subsequent licensee of the spectrum. And it goes on to say those are property of the treasury. And your interpretation of that is why that isn't a waiver of any of the interest that you have in offset and or surplus. My interpretation is it certainly does say that, but if you look down at the bottom of the page there in Section I, it mentions that the commission may exercise any remedies of a secure party under the Uniform Commercial Code. So the commission was, in the first place, specifically placing itself under the aegis of the UCC. But also, if you hearken back to the 1996 opinion letter, that letter indicates that the UCC becomes part of the federal common law that should be applied in any event. And under the UCC, unless there's a conflicting federal interest, and I don't know of any that would apply to this, as I just said, the commission should apply the provision of the UCC that does not permit waiver. It absolutely precludes people from either party from agreeing to what's the language that Judge Pillard cited there in Paragraph D. I mean, my take on this is what the commission is doing is outrageous. You know, if Moe's Quickie Loan Shop up the street here tried to do this, they would be sanctioned by somebody. And here you've got a federal agency taking an outrageous advantage of a debtor in contrast to the UCC, and it's a federal agency that's doing that. So just one quick follow-up. So under your rationale, if a license holder starts its installment payment, and then on day one of the arrangement, suppose that some exogenous factor just dramatically raises the value of the spectrum. And so it goes, all of a sudden spikes, and it's worth 10 times what it was worth before, then the installment payer would just have the incentive to default. In that situation, I think the installment payer would sell it to somebody else for the highly increased value. Is there a free ability to sell it? Yeah, there's a free ability to sell it. If you sell it to somebody that's not in the eligible category that's entitled to installment payments, you have to pay a penalty, but you can freely sell it, yes. And the resale is not subject, there's no FCC oversight of the resale? Yeah, you have to, as with any assignment of a license, you have to file an application with the FCC, and the FCC has to approve it. But does this happen actually in the marketplace, that when the value goes way up, then somebody resells it and the FCC authorizes it, and then that happens all the time? It happens all the time. I've done it myself many times, yes. All right, why don't we hear from David? Thank you. Thank you, Your Honors, and may it please the Court. David Gossett from the FCC. Let me start where Mr. Evans also started. Section 47.1915 of the FCC's regulations, which is part of the debt collection proceedings in the FCC regulations, specifically says the commission will consider a request submitted by the debtor to compromise the debt. Taking a step back, it is. So didn't the record show that that was requested? Your Honor, GLH did submit a debt compromise request back in 2003. That request was returned without action because GLH failed to continue to press it. That request is not before the Court. No, but I thought the commission said it was premature. In this order, it said it was premature to consider any question about debt collection because debt collection follows from the cancellation of the license. The actual request for debt compromise was a separate commission proceeding. He filed a debt compromise request that was returned without action. He didn't seek any further review of that. It's not before the Court. So what should he do, in your view? He should file a petition for debt compromise with the commission under 1.1915. All right. And does he pay a fee? No, he does not. All right. So all he has to do is refile this piece of paper he filed before. Yes, that would certainly start the process. It's important to understand the debt is a debt. What do you mean, start the process? Because his point is that under the regulations, you're supposed to start it immediately after the default. It hasn't been started for years. And your brief says it still hasn't been started. I said we have taken no action. The brief says we've taken no action to collect the debt. We did send him a demand letter back in 2004, I believe, saying that under the terms of the security agreement, the debt had been accelerated and was due. That's not in the record because it's not part of this proceeding. This proceeding is simply an appeal, a petition for review from the denial of the waiver. So if he files it, can he file a petition for debt compromise now and there's no? Yes, there's no time limit on that. There's certainly no time limit on that. But it's important to understand there are elaborate rules governing that. For example, only the attorney general has the right to compromise a debt for more than $100,000. So, yes, we have set forth equitable principles in the Len Kennedy letter, and we've acknowledged those in our brief here, in the orders here, et cetera, saying that equity would ordinarily suggest that he should not, we shouldn't recover this money from him. Let me be clear. Based on the record we have before us, this is somebody who paid faithfully for, what was it, seven years, had three years to go. And then the bank bellied up, as it were, and through no fault of the petitioner. Let's just take that as a hypothetical for the moment. So he loses in the sense that he is, his 2004 letter says he's in default. And the commission then re-auctions, or not re-auctions, but I don't know what you call it. Auctions a new license for the same spectrum. Precisely. And it gets more than the debt. What is the commission's standard operating procedure in that circumstance? I don't know that there's a standard operating procedure. This issue does not actually come up that frequently. Why is that? That's what I'm trying to understand about the real world here. It's been 13 years, and I'm trying to understand what this cloud means. Does it mean anything? Is it just a cloud? It's ephemeral. It has no real world. Or if this company were to seek either at an auction or through assignment to get new licenses, would it automatically be denied because of this cloud? The reason it's not common, Your Honor, is because the commission only authorized installment payments for this brief period between 1994 and 1997. That's three years. But in three years, that's 20 years ago. So there are no current licenses where someone has an installment payment arrangement with the commission. Those licenses all expired by the mid-2006, 2007. So there aren't any more, and it's a very rare circumstance. This is the very tail end of the C-block auction. So why don't we just get rid of this? Your Honor, what the commission held in the order before you was that it was appropriate to deny the waiver here. It was appropriate to deny the waiver because the commission has routinely said that a company's business arrangements are not a reason for renting a waiver. They entered into a business contract that went south, but that happens all the time, and that's not the commission's fault. And the commission also explained that the entire process of the auction and the auction system depends on the party that values the license the most winning the auction. And if they don't pay the payments, they don't. The commission's view is, you know, I default on my mortgage, I lose my house, period. And it's had a very strict interpretation of the rule because I never should have bought this house I couldn't afford. All right? Now we have a situation where the house I bought I could afford because I had solid security behind it. I had a bank. And then the bank goes belly up. The commission takes the same attitude, even though I've already built out I'm providing service to an underserved area. And as a result, and I don't know if this is actually what the record shows, but your brief doesn't dispute it. For seven years, this area did not get any service, or as the full brief says, competitive service. There was service. It was not competitive service. It was the primary carrier, the main major market carrier. The commission has uniformly held that the build-out is not an adequate reason. No, I understand. But what I'm trying to understand is if the commission says we have this rule, we're going to interpret it strictly, we don't want to spend a lot of time fussing about this, you either pay or you don't pay on time, the full amount that's owed, end of discussion. So instead, it wants to litigate in court. It wants to have this elaborate debt collection compromise proceeding. So where do you spend your resources is what I'm trying to understand. He says, you know, you no longer have this installment program, so why are we belaboring this? And your position is, well, the only thing before us is the waiver. We ought to affirm and let any debt compromise, debt collection proceedings be handled in another ticket for review. I'm not suggesting that the debt collection proceedings would be complicated or elaborate. I'm just suggesting that as Rule 1.2110 suggests, the consequences of the cancellation of his license was that of his failure to pay was the cancellation of the license and that he would be subject to debt collection proceedings. That's the conclusion that is before the court. I'm not denying any of the equitable principles stated in the Len Kennedy letter. I'm not suggesting that I could stand here today and expect that we would seek to recover funds from him. I don't know. As I said earlier, for example, to compromise this debt, we'd need the consent of the Attorney General, and we'd have to actually be engaged in debt collection discussions. Mr. Evans hasn't sought to raise those. He's instead been litigating this question and litigating the question of the validity of the waiver when the denial of the waiver was entirely consistent with every precedent of the commission. We have the Department of Justice in here all the time, and litigation starts, and counsel for the department calls up counsel for the other side and says, do you really want to litigate this? Can't we resolve this issue? The case goes away. Nothing to bar the FCC from doing that either. Your Honor, we haven't sought to collect this debt, so it's not that we see there any pressing need for any more debt. But isn't that on you? I'm just saying, isn't that on you that you haven't sought to collect the debt? I thought there was a duty to do so promptly. We have not done so because of the pendency of this litigation, which challenges the question of the existence of the debt. And so once it's established that there is, in fact, a debt, then we can proceed with any debt collection if necessary. And one of your answers, I think you said, and I just want to make sure I'm following the process, that debt collection proceedings would have to be going on in order to get a determination. But I thought the petition for debt compromise essentially allows for an anticipatory determination. So if they file a petition for debt compromise, wouldn't they in the ordinary course get a resolution of whether a debt is owed? Even if you haven't initiated debt collection proceedings. And what they want to say is, we just want to eliminate the possibility that you could initiate debt collection proceedings because we don't think there's a debt. And the way we're going to get that resolved is we're filing this petition for debt compromise. I welcome the filing such a petition. My point is that the 2003 petition for debt compromise was returned without action. And he didn't seek further review of that. He didn't file an application for review or reconsideration of that. It's a separate commission proceeding. He can file that petition today and, well, after the furlough, and then we could proceed on it. So you are making a statement on the record that all he needs to do is to file, according to that rule you cited to us, this petition for debt compromise based on the FCC's 2004 letter that his client owes his debt? Your Honor, I'm suggesting that would start the debt collection process in which we could determine whether to compromise the debt and to, for example, to offset the monies we obtained. I'm not in a position to say that the commission would do so. I can just point to the commissions. So, counsel, is that a yes? Your Honor, I'm not sure what you meant by all he needs to do. My question was not procedurally to tee up the issue that he's trying to track. Yes, all he needs to do to tee it up procedurally is to file. That's what the question was, counsel. It didn't talk about the result. In that case, Your Honor, I was just trying to be very careful. I'm very clear about that. Okay, yes, that's all he needs to do, Your Honor. To get on the record exactly what the FCC is representing needs to be done to resolve this matter. That's all he needs to do, Your Honor. All right. Any further questions? I have a question about how do you respond to, you know, the position that the commission takes about cancellation is, you know, this is written into the terms of the agreement and cancellation has no procedural right to a hearing. And that, you know, and Mr. Evans raises the prospect that if that's true, the FCC can condition any license it grants on compliance with rules and then create an end round around the hearing requirement. And do you have a limiting principle on that? Sure, Your Honor. Section 312A sets forth the situations where a hearing is needed. We couldn't write around one of those proceedings. But if one looks at those proceedings, they're all questions that involve questions of, for example, willfulness. Or they're the kinds of things about which you would need a hearing. They're not a question about did something happen. The only question here for purposes of the cancellation is, did a payment get made on July 31st? It didn't. And this is, of course, what this court held in Morris. All right. If the court has no further questions, I ask that the petition be reviewed. Thank you. Counsel for petitioning? Thank you, Your Honor. One point I would like to make in response to a question that you raised with me earlier, which my associate pointed out, as to what current negative effects does our status in LIMBO have. There's some question as to whether the commission considers GLH to be a current defaulter, which prevents you from participating in any lottery at all. I don't know whether we're a current defaulter or not, because I don't know whether there's a debt that's owed or not. So we're in the status of LIMBO. Well, let me ask you. You're not denying you got this 2004 letter saying you owed this money? I was surprised to hear that. I'm unaware of that. Oh, you're unaware of that letter? Yeah, yeah. I see. And I've been involved in the case since 2002, so I'm not saying it didn't happen. Well, you also represent that there is such a letter. You represented that to the court. I'm not saying it didn't happen, but I'm completely unaware of it. Any obstacle to your proceeding to file this debt compromise petition? I don't think that there's an obstacle. The problem, though, is we're still left with the question of what about the payment of the overages, because I don't think the commission, at least based on what they've said in the brief and what they said in the two orders that are under review, they said you're not entitled to get the overage. So if we went in for a debt compromise petition, I don't think they're going to say, yeah, you don't owe us anything, and here's $2 million that we owe you. Right, but you heated up with two questions. One is whether you owe them, and the second is whether they owe you. On the first part of it, whether you owe them, it sounds like there's a procedure available to make that determination. They're saying it is. I mean, it seems to me the procedure that was available was we challenged their ruling that we owe the money, and that's one of the issues that's before the court now. Yeah, I mean, there's certainly ways that that could be resolved in this case to your favor. I'm not saying that there's not. I'm just saying that there's also a way in which you can get the determination that you're looking for. Yeah, and frankly, I'd be looking for the same answer that Judge Rogers was asking for, was, well, what would you do if they filed such a thing? Because apparently the only equity that's involved here, according to the 1996 opinion letter, is did the commission receive offsetting funds from the reauction of the license? That's just an actual fact. And if that's the equitable principle that allows us to not owe the commission any money, then it shouldn't be anything that has to be argued about. Anything further? No, that's all, Your Honor. Thank you. Thank you. We'll take the case under advisory. Stand.
judges: Rogers, Srinivasan, Pillard